OPINION
On January 4, 2001, a complaint was filed in the Domestic Relations and Juvenile Branch of the Court of Common Pleas for Franklin County, Ohio, in which it was alleged that Zachary Jones was a dependent minor. Zachary was then ten years old and was residing with his two half-sisters and his stepfather at an address in Columbus, Ohio. The location of Zachary's father was unknown. Zachary's mother, Karen Nye, contested the principle allegations in the complaint.
A preliminary hearing on the complaint was held January 5, 2001 before a judge of the Domestic Relations and Juvenile Branch. A temporary order of custody to Franklin County Children Services was journalized. The order included a requirement that the child be kept in Franklin County. An additional hearing was scheduled for February 5, 2001.
Service of process was obtained upon Zachary's biological father through service by publication. An attorney was appointed to serve as Zachary's guardian ad litem. A different attorney was appointed to represent Ms. Nye.
The trial court allowed the complaint to be amended to change the underlying allegations. However, the amended complaint did not change the principle allegation that Zachary was a dependent child.
A motion was filed on behalf of Ms. Nye which requested that unsupervised visitation be permitted between Ms. Nye and Zachary. The trial court denied the motion.
On March 6, 2001, the trial court held a hearing at which it determined that Zachary was a dependent minor. The trial court then ordered submission of a case plan and scheduled an interim review for July 9, 2001.
Counsel filed a direct appeal on behalf of Ms. Nye. The Franklin County Public Defender has been appointed to assume representation on appeal. In the brief filed on behalf of Ms. Nye (hereinafter "appellant"), eight errors have been assigned:
FRIST ASSIGNMENT OF ERROR
 The trial court erred as a matter of law by admitting trial testimony and reports of two licensed social workers and a psychologist in the absence of a specific statutory waiver or exception in violation of R.C. 4732.19 and R.C. 2317.02(G).
 SECOND ASSIGNMENT OF ERROR The trial court erroneously admitted expert opinion testimony that was not based upon an adequate foundation.
 THIRD ASSIGNMENT OF ERROR The trial court committed reversible error by taking judicial notice of prior proceedings held in another case.
 FOURTH ASSIGNMENT OF ERROR The trial court committed reversible error by preventing the parties from providing closing arguments.
 FIFTH ASSIGNMENT OF ERROR Appellant was deprived of effective assistance of counsel.
 SIXTH ASSIGNMENT OF ERROR The trial court deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Sections 9 and 10, Article I of the Ohio Constitution by basing its decision on evidence or information obtained in other proceedings, and not in the trial of the case at bar.
 SEVENTH ASSIGNMENT OF ERROR The judgment of the trial court is not supported by sufficient credible evidence.
 EIGHTH ASSIGNMENT OF ERROR The judgment of the trial court is contrary to the weight of the evidence.
In her first assignment of error, appellant contends the trial court erred in admitting certain testimony and psychological reports in violation of the statutory privileges set forth in R.C. 4732.19 and 2317.02(G). R.C. 4732.19 states:
 The confidential relations and communications between a licensed psychologist * * * and client are placed upon the same basis as those between physician and patient under division (B) of section 2317.02 of the Revised Code. * * *
At the time of the hearings, former R.C. 2317.02 applied and stated, in pertinent part:
 The following persons shall not testify in certain respects:
* * *
 (B)(1) A physician * * * concerning a communication made to the physician * * * by a patient in that relation or the physician's * * * advice to a patient * * *.
* * *
 (G)(1) * * * [A] person licensed under Chapter 4757. of the Revised Code as a professional clinical counselor, professional counselor, social worker, or independent social worker, or registered under Chapter 4757. of the Revised Code as a social work assistant concerning a confidential communication received from a client in that relation or the person's advice to a client * * *[.]
On February 2, 2001, prior to the trial on the dependency complaint, a hearing was held for the purpose of determining whether or not appellant should be granted more companionship with Zachary. Sharon Pickel, a licensed independent social worker ("LISW"), testified with regard to her counseling of Zachary and his half-sisters. Ms. Pickel worked at Saint Vincent Family Centers, an outpatient mental health center for children. (Feb. 2, 2001 Tr. 15.) Her involvement with the Nye family began with counseling Zachary's half-siblings after a referral by Franklin County Children Services in a separate action. Id. at 17. Appellant later joined in on the family sessions, and Ms. Pickel had an individual session with appellant in order to "get acquainted." Id. at 18, 33. Ms. Pickel testified that she was the children's therapist. Id. at 24, 37-38. Ms. Pickel testified that she preferred Zachary stay with Mr. Nye and recommended that appellant be granted supervised visitation with Zachary. Id. at 25-26, 28.
As to Ms. Pickel's testimony, we find there was no violation of the privilege set forth in R.C. 2317.02(G)(1). Appellant was not Ms. Pickel's client, Zachary was. Therefore, the privilege set forth in R.C.2317.02(G)(1) is not even implicated. In addition, even if we assumed for argument purposes only that appellant was Ms. Pickel's client, Ms. Pickel did not testify as to any confidential communication made to her by appellant. For these reasons, appellant's argument as to Ms. Pickel's testimony is not well-taken.
Appellant also takes issue with the testimony of George Pfaff, LISW, and John Mason, Ph.D., who testified at the trial on the dependency complaint. Each of these therapists conducted psychological evaluations of appellant pursuant to court orders. They each testified as to their findings. In addition, Dr. Mason's report was admitted into evidence. Appellant contends that the statutory privilege applies to the testimony and the report and that it was prejudicial error to admit such. For the reasons that follow, we determine that the trial court did not err in allowing this testimony and in admitting Dr. Mason's report.
In support of her position, appellant points the Supreme Court's recent holding in In re Wieland (2000), 89 Ohio St.3d 535. The Supreme Court held:
 In the absence of a specific statutory waiver or exception, the testimonial privileges established under R.C. 2317.02(B)(1) (concerning communications between a physician and patient), R.C. 4732.19 (concerning communications between a licensed psychologist and client), and R.C. 2317.02(G) (concerning communications between a licensed counselor or licensed social worker and client) are applicable to communications made by a parent in the course of treatment ordered as part of a reunification plan in an action for dependency and neglect.
Id. at syllabus.
Wieland involved a dependency/neglect complaint, and children services had moved for an order admitting certain records and testimony regarding the mother's substance abuse treatment, arguing that such was appropriate because the treatment was required under a reunification plan and was relevant to the case. Id. at 536. The juvenile court ordered that such records be disclosed as the privilege only extended to voluntarily-sought treatment. Id. The court of appeals reversed the trial court's ruling on this matter. Id. at 536-537.The Supreme Court affirmed the appellate court's decision.
The Supreme Court set forth the issue as being whether the testimonial privileges were applicable to communications made by a parent in the course of treatment ordered as part of a reunification plan in a dependency and neglect action. Id. at 537. The Supreme Court noted that none of the exceptions or waivers set forth in the relevant statutes would allow the in-court disclosure of confidential information on the basis that the treatment or service received by the patient or client was involuntary or ordered as part of a case plan. Id. at 537-538.
The Supreme Court also noted that the purpose behind the privilege statutes is to create an atmosphere of confidentiality, encouraging the patient to be completely candid and open with his or her physician, thereby enabling more complete treatment and that such concerns are prevalent where a patient is required, under the terms of a reunification plan, to utilize psychological or other social services in an effort to remedy the problems that initially caused the child to be placed outside the home. Id. at 539. The Supreme Court then quoted from the court of appeals' decision:
 "In order to meet the goal of the reunification plan, the purpose underlying the statutory privilege — effective treatment — is material and significant. In other words, if a parent is fearful that any communications with her provider will not privileged, she may not be open and truthful during treatment, thereby undermining the effectiveness of treatment and ultimately defeating the goal of remedying the reason for the removal of the child."
Id.
Appellant contends that under Wieland, the testimony of Mr. Pfaff and Dr. Mason and Dr. Mason's report were privileged. We disagree. The holding in Wieland states, in essence, that the statutory privileges are applicable to communications made by a parent in the course of treatment. The Supreme Court rejected the trial court's conclusion that such communications were not privileged because they were made in the course of involuntary treatment. The key is that the communications were made in the course of treatment, regardless of whether or not such treatment was voluntary.
The testimony and report admitted in the case at bar were not privileged because they did not concern communications made in the course of treatment. Rather, the testimony and report were forensic in nature and, thus, were admissible. The court of appeals' decision in In re Wieland (July 9, 1999), Montgomery App. No. 17646, unreported, which the Supreme Court affirmed, accurately set forth the difference between consultations with professionals for forensic purposes and those for purposes of treatment. The court of appeals stated that an examination of the purpose and nature of the professional help sought was necessary in determining whether the privilege applies.
In a court-ordered examination or evaluation, the parent is required to consult the professional for forensic purposes, and the professional is not examining or treating the patient in order to alleviate medical complaints or substance addictions. Id. The professional is performing a forensic evaluation for the purpose of helping the court to determine the best course of action; hence, no privilege attaches to a psychiatric examination or substance abuse evaluation that is ordered in a dependency/neglect case for forensic purposes. Id.
However, when the parent is also required to undergo treatment, the purpose of which is to help remedy the reason for the removal of the child and thus meet the goal of reunification, the purpose underlying the psychologist-patient privilege is implicated, and the privilege applies. Id. The court of appeals remanded the matter to the trial court for an examination of the records and testimony in order to determine whether such involved forensic examination findings or communications made during the course of treatment. Id.
In the case at bar, Mr. Pfaff and Dr. Mason merely performed standard mental health assessments and/or psychological evaluations of appellant. Mr. Pfaff testified as to his findings. Dr. Mason made a report of his evaluation of appellant, he testified with regard to his findings in such report, and the report was admitted into evidence. These assessments/evaluations were for forensic purposes only and did not involve treatment. Hence, the statutory privileges were not implicated, and such testimony and report were properly admitted.
For all of the above reasons, the trial court did not err in allowing the testimony of the mental health professionals and in admitting any report stemming from psychological evaluations of appellant. Accordingly, appellant's first assignment of error is overruled.
In her second assignment of error, appellant contends the trial court erred in allowing Mr. Pfaff to testify as an expert without laying a proper foundation and without a threshold determination that Mr. Pfaff was an expert pursuant to Evid.R. 104(A) and Evid.R. 702(B). Appellant asserts that Mr. Pfaff was improperly permitted to testify regarding his diagnostic impression of appellant and that such impression was based on information that was not admitted into evidence. The guardian ad litem contends that Mr. Pfaff testified merely as a lay witness under Evid.R. 701, which states:
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
In the case at bar, the trial court specifically stated that Mr. Pfaff was not testifying as an expert but merely as a witness who performed a psychological assessment of appellant. (Feb. 22, 2001 Tr. 117-118.) As part of that assessment, Mr. Pfaff reviewed and considered information obtained from the case worker and from an assessment of appellant performed at another mental health facility. Mr. Pfaff testified as to his diagnosis of appellant. He gave no opinion at trial as to her ability to parent and made no recommendation regarding the dependency issue.
Mr. Pfaff is an LISW and testified as to his professional and psychological assessment and diagnosis of appellant. Clearly, Mr. Pfaff's testimony was in the nature of expert testimony, and he should have been formally qualified as an expert by the trial court. However, appellant's counsel never objected to or challenged Mr. Pfaff's qualifications to testify as an LISW who performed an evaluation of appellant.[1]
Hence, appellant has waived all but plain error. See State v. Hartman (2001), 93 Ohio St.3d 274, 286; In re Jenkins (June 28, 2001), Franklin App. No. 00AP-1411, unreported.
We find no such plain error. At the beginning of his testimony, Mr. Pfaff set forth his educational background, his work history as a social worker, and his experience performing mental health assessments. (Feb. 22, 2001 Tr. 91-94, 96.) Mr. Pfaff was qualified to testify as to his evaluation of appellant and, thus, no plain error has been demonstrated. See Hartman at 286.
In addition, we find no plain error in Mr. Pfaff basing his testimony, in part, on what was before him when he made his evaluation of appellant, including the information obtained from the case worker and the prior assessment. Mr. Pfaff personally examined appellant. His assessment and diagnosis of appellant was clearly based in whole or in major part upon his personal examination of appellant. Therefore, the requirement of Evid.R. 703 was met. See State v. Solomon (1991),59 Ohio St.3d 124, syllabus.
For all of the above reasons, appellant's second assignment of error is overruled.
In her third assignment of error, appellant contends the trial court improperly took judicial notice of proceedings in another case, specifically, the separate case involving Zachary's half-sisters. Appellant takes issue with the fact that the trial court, pursuant to a request by the guardian ad litem, stated that the psychological evaluations performed on appellant and Mr. Nye in the case involving the Nye girls were incorporated into the present case. (Feb. 2, 2001 Tr. 49.) Appellant correctly points out that a court may not take judicial notice of prior proceedings before it but only of the proceedings in the immediate case. See Diversified Mortgage Investors, Inc. v. Bd. of Revision (1982), 7 Ohio App.3d 157, 159. However, for the reasons that follow, we find no error.
As indicated above, psychological evaluations had been performed by Dr. Mason on appellant and Mr. Nye in the case involving Zachary's half-sisters. At the dependency trial at issue here, Dr. Mason testified in detail with regard to his prior evaluations of appellant and Mr. Nye, and his reports were admitted into evidence. Therefore, such evidence was not admitted by way of judicial notice, but through the actual testimony of Dr. Mason in the case at bar. For this reason, appellant's contentions are not well-taken.
Accordingly, appellant's fourth assignment of error is overruled.
In her fifth assignment of error, appellant contends that for a variety of reasons, she was denied the effective assistance of counsel. The test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody. In re Heston (1998), 129 Ohio App.3d 825,827, citing Jones v. Lucas Cty. Children Serv. Bd. (1988),46 Ohio App.3d 85, 86.
In order to prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from such performance. State v. Reynolds (1998), 80 Ohio St.3d 670, 674, citing Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,2064. The benchmark for judging any claim of ineffective assistance of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Strickland, 466 U.S. at 686.
Under the two-part test, appellant must show, first, that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably and, second, that but for counsel's errors, there was a reasonable probability that the results of the trial would be different. State v. Keith (1997), 79 Ohio St.3d 514, 533-534. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675.
Appellant contends her trial counsel was ineffective because he failed to address the Wieland issue involving privileges and in agreeing to incorporate Ms. Pickel's pre-trial testimony, which appellant contends involved privileged matters, into the trial record. Trial counsel appropriately objected to testimony touching on the privilege issue. However, as addressed previously, the statutory privileges were not applicable to the testimony admitted in the case at bar. Further, the record shows that trial counsel vigorously and competently represented appellant. Appellant has failed to show that she was denied the effective assistance of counsel.
Accordingly, appellant's fifth assignment of error is overruled.
In her sixth assignment of error, appellant contends the trial court erroneously considered information obtained in the prior action involving the Nye girls. In support of this assertion, appellant points to the following statements made by the trial court:
 * * * [T]he Court has listened to the evidence in this case. The Court has a long familiarity with this family.
* * *
 * * * The Court has a long familiarity with this family going back to when father first approached the Court for an emergency ex parte order because the children had been taken out of state by the mother. Having listened to the evidence and considering those allegations in the amended complaint * * *, it is the order of this Court that * * *
* * *
 * * * Zachary Jones is a dependent minor pursuant to R.C. 2151.04(C). [Mar. 6, 2001 Tr. at 93-95.]
Appellant contends that such statements strongly suggest that the trial court based its decision not on the evidence before it in the current case, but on its prior experience with the litigants. We cannot take this isolated statement and conclude that the trial court based its decision on its prior experience with the parties. Rather, we agree with the guardian ad litem's assertion that the court's statements merely indicated that it had a familiarity with the parties. At most, it could be argued that the trial court concluded that appellant had not remedied any problems that existed at the time of the action involving the Nye girls. However, this does not mean that the trial court based its decision on evidence that was not before the court in the present action. Indeed, the record as a whole shows that the trial court based its decision on the evidence presented in the present action.
Appellant's sixth assignment of error is overruled.
We address appellant's seventh and eighth assignments of error together. Appellant contends the trial court's decision is against the weight of the evidence and is not supported by sufficient evidence. We begin by noting that a court must find a child is dependent by clear and convincing evidence. R.C. 2151.35. Clear and convincing evidence has been defined as evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368.
In essence, sufficiency of the evidence is a test of the adequacy of the evidence — whether the evidence is legally sufficient to support the verdict or judgment. See State v. Thompkins (1997),78 Ohio St.3d 380, 386. In the case at bar, the question is whether there was sufficient evidence to support the court's finding by clear and convincing evidence.
In determining whether the judgment is against the manifest weight of the evidence, this court is guided by the presumption that the findings of the trial court are correct. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 78. Judgments supported by some competent, credible evidence going to all the essential elements will not be reversed as being against the manifest weight of the evidence. In re Brofford (1992), 83 Ohio App.3d 869, 876-877, citing C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279.
In the case at bar, the trial court determined that Zachary was a dependent child under R.C. 2151.04(C) which states that a child is dependent if his or her condition or environment is such as to warrant the state, in the interest of the child, in assuming the child's guardianship. In determining dependency, the focus is on the child's condition and environment and not the condition or fault of the parent. See In re Burchfield (1988), 51 Ohio App.3d 148, 156; In re Pitts (1987), 38 Ohio App.3d 1, 3. However, the court may consider a parent's conduct insofar as it forms part of the child's environment. In re Burrell (1979), 58 Ohio St.2d 37, 39. The parent's conduct is significant if it is demonstrated to have an adverse impact on the child sufficient to warrant state intervention. Id.
There was clear and convincing evidence supporting the trial court's dependency determination. For a variety of reasons, Zachary was not in a stable environment when he was with his mother. She consistently exhibited erratic behavior. She had a history of moving from place to place and making poor judgments which could have placed or did place Zachary in dangerous environments. At the time of the trial, appellant did not have a job and had a history of only short-term employment. Zachary's therapist testified that Zachary should not be living with his mother. Indeed, Zachary's therapist recommended that appellant only be given supervised visitation with her son. The case worker testified that appellant has made no progress on counseling.
It is clear from the record that appellant's conduct is such that it has had an adverse impact on Zachary sufficient to warrant state intervention. Therefore, the trial court's determination that Zachary is a dependent child was supported by clear and convincing evidence. Accordingly, appellant's seventh and eighth assignments of error are overruled.
Having overruled each of appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
PETREE, J., and BRYANT, P.J., concur.
[1] Appellant only objected to certain reports that were part of the files Mr. Pfaff reviewed in making his assessment.